**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SHERMAN BURTON                                    CIVIL ACTION

VERSUS                                            NO.  11-1781

N. BURL CAIN                                      SECTION "C"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section**

**2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual Background

The petitioner, Sherman Burton ("Burton"), is a convicted inmate, incarcerated in the

Louisiana State Penitentiary in Angola, Louisiana.[2]  He was charged by bill of information in

Orleans Parish with two counts of molestation of a juvenile.[3]

The record reflects that on the evening of April 10, 1999, Burton witnessed eleven-year old,

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 6/15/99.

C.S, kissing her fourteen-year old cousin, V.C.[4]  Burton was the boyfriend of V.C.'s mother, and the only adult in the residence at the time.

After witnessing V.C. and C.S. kissing, Burton called V.C. out of the room and questioned him.  Burton then returned to the room with V.C. and instructed him to pull down his pants.  Although V.C. initially hesitated, he complied after Burton told him, in a serious voice, to do it.  Burton then insisted that C.S. look.  V.C. requested permission to pull his pants back up, but Burton refused the request, at least until C.S. authorized V.C. to pull them up.  Thereafter, Burton and V.C. left the room.

Nevertheless, Burton once again returned to the room and locked the door.  Burton began taunting C.S., first asking whether he should tell anyone about what she and V.C. had done, then saying he was not going to tell.  Burton then put his hands underneath C.S.'s shirt.  She removed his hands, but he lay on top of her and put his hands underneath her shirt and bra.  Burton reached into her pants and tried to pull her pants down and touched her private parts.  C.S. estimated that this behavior lasted five or six minutes.  Afterward, Burton instructed C.S. to not tell anyone about it.

Later, C.S. wrote a note to her father, describing what had happened.  The note had related that Burton had walked in on her and V.C. kissing, and that Burton had told V.C. to do "something," but she could not hear what.  C.S. also wrote that Burton had locked the door and had started asking her questions, that he had began touching her, and that she had stopped him from doing so by pushing him away.  The note was later introduced into evidence.  During trial, C.S. explained on cross examination that although the letter to her father did not mention anything about Burton ordering V.C. to drop his pants, she did not include it because she did not intend to detail everything

---

[4]The facts were taken from the Louisiana Fourth Circuit opinion after direct appeal.  *State v. Burton*, 838 So. 2d 946 (La. App.4 Cir. 2003);  St. Rec. Vol. 1 of 6, 4th Cir. Opinion, 2002-KA-1854, pp. 2-6, 2/12/03.

that happened in that letter.

Following the incident, New Orleans Police Detective Ken Thomas investigated the case. Detective Thomas testified that the statement he took from C.S. was consistent with the incident report completed by the officer who had first responded to the complaint made by C.S.'s father. Detective Thomas confirmed that C.S. had never mentioned anything to him about Burton ordering V.C. to pull down his pants. The detective said that he had asked C.S. whether Burton had touched her underneath her clothing, and she had replied in the negative.

## II.    State Procedural Background

On June 1, 1999, the State of Louisiana charged Burton with two counts of molestation of a juvenile.[5] On October 5, 1999, following trial in the Orleans Parish Criminal District Court, a jury found Burton guilty as charged for the count involving C.S., and guilty of attempted molestation of a juvenile for the count involving V.C.[6] On October 14, 1999, the Trial Court sentenced Burton to seven years in prison at hard labor on each count, to run concurrently in the custody of the Louisiana Department of Corrections.[7]

The State filed a multiple bill of information alleging Burton to be a third-felony offender under Louisiana's Habitual Offender Law.[8] After a hearing on October 29, 1999, the Trial Court found Burton to be a second-felony offender and resentenced him to a term of 20 years in prison at hard labor in the custody of the Louisiana Department of Corrections.[9]

---

[5]St. Rec. Vol. 1 of 6, Bill of Information, 6/15/99.

[6]St. Rec. Vol. 1 of 6, Verdict Forms, 10/5/99; Minute Entry, 10/5/99.

[7]St. Rec. Vol. 1 of 6, Minute Entry, 10/14/99; Sentencing Transcript, p. 2, 10/14/99.

[8]St. Rec. Vol. 1 of 6, Multiple Bill of Information (undated).

[9]St. Rec. Vol. 1 of 6, Minute Entry, 10/29/99; Multiple Bill Hearing Transcript, p.22, 10/29/99.

Subsequently, both Burton and the State appealed to the Louisiana Fourth Circuit Court of Appeal.[10]  Burton assigned the following errors:[11]  (1) the evidence the prosecution used at trial was legally insufficient to sustain his conviction; (2) the Trial Court failed to sufficiently articulate the factual basis for his sentence; (3) the provision of Louisiana's molestation statute providing for an enhanced sentence if the defendant exercised control or supervision over the victim, was unconstitutional; (4) the evidence used at the habitual offender hearing was legally insufficient to sustain his multiple offender status; and (5) Louisiana's Habitual Offender Law was unconstitutional.  The State appealed on the grounds that the Trial Court erred in failing to find Burton to be a third-felony offender.[12]

On February 12, 2003, the Louisiana Fourth Circuit found no merit to Burton's assignments of error and affirmed his conviction.[13]  However, the Court concluded that the State's assignment of error had merit, and remanded the case to the Trial Court with orders to resentence Burton as a third-felony offender.[14]

Thereafter, Burton timely applied for a writ of certiorari from the Louisiana Supreme Court, raising the following assignments of error:[15]  (1) the Louisiana Fourth Circuit had improperly considered the State's assignment of error despite prosecutors' failure to seek reconsideration of

---

[10]St. Rec. Vol. 1 of 6, Pet.'s 4th Cir. Brief, 2002-KA-1854, 9/27/02; State's 4th Cir. Brief, 2002-KA-1854, 10/22/02; Minute Entry 11/29/99.

[11]St. Rec. Vol. 1 of 6, Pet.'s 4th Cir. Brief, 2002-KA-1854, 9/27/02.

[12]St. Rec. Vol. 1 of 6, State's 4th Cir. Brief, 2002-KA-1854, 10/22/02.

[13]*State v. Burton*, 852 So.2d 1024 (La. App.4 Cir. 2003); St. Rec. Vol. 1 of 6, 4th Cir. Opinion, 2002-KA-1854, 2/12/03.

[14]*Id.*

[15]St. Rec. Vol. 2of 6, Pet.'s S. Ct. Writ App., 2003-KA-0696, 3/12/03.

Burton's sentence in the Trial Court; (2) Louisiana Fourth Circuit had legally insufficient evidence to make an independent judgment that Burton was a third-felony offender; and (3) Louisiana's Habitual Offender Law was unconstitutional. The Supreme Court denied Burton's writ of certiorari on September 5, 2003.[16]

In 2006, Burton filed a petition for habeas corpus and, alternatively, a motion to quash the multiple bill, on the grounds that his original seven-year sentence, had expired without his having been resentenced under the Habitual Offender Law.[17]

When the Trial Court did not act on his petition for habeas corpus or motion to quash the multiple bill, Burton sought a writ of mandamus from the Louisiana Fourth Circuit.[18] On May 29, 2007, the court granted relief and ordered the Trial Court to rule on the petition within 60 days.[19]

On July 19, 2007, Burton filed a "Motion for Release" in the Trial Court urging the same grounds as his previously filed state habeas petition.[20] The Trial Court issued a written judgment on August 3, 2007, denying release concluding that the Louisiana Fourth Circuit had remanded Burton for re-sentencing as a third-felony offender, which did not require the commencement of new habitual offender proceedings.[21]

In accordance with the Louisiana Fourth Circuit's remand order, on August 17, 2007, the Trial Court resentenced Burton as a third-felony offender, to imprisonment for life, at hard labor,

---

[16]*State v. Burton*, 852 So.2d 1024 (La. 2003); St. Rec. Vol. 2 of 6, S. Ct. Order., 2003-KA-0696, 9/5/03.

[17]St. Rec. Vol. 2 of 6, Petition for Habeas Corpus and/or Motion to Quash Multiple Bill,(undated).

[18]St. Rec. Vol 3 of 6, 4th Cir. Mandamus App., 5/21/07.

[19]St. Rec. Vol 3 of 6, 4th Cir. Order, 200-K-0630, 5/29/07.

[20]St. Rec. Vol. 4 of 6, Motion for Release, 7/19/07.

[21]St. Rec. Vol. 3 of 6, St. D. Ct. Judg. On Motion for Release, 407-530, 8/3/07.

in the custody of the Department of Corrections, without benefit of parole, probation, or suspension of sentence.[22]

Burton sought a second writ of mandamus from the Louisiana Fourth Circuit on September 20, 2007, regarding the Trial Court's continued failure to rule on his state habeas petition.[23] The Louisiana Fourth Circuit denied Burton's writ on November 27, 2007, finding that the Trial Court's denial of Burton's motion for release had sufficiently disposed of his claims.[24]

Burton then appealed his habitual offender sentence to the Louisiana Fourth Circuit, arguing that the Trial Court had erred in denying his motions to quash the multiple bill and for release and that his life sentence was unconstitutionally excessive.[25] The Louisiana Fourth Circuit found no merit to Burton's assignments of error and affirmed his life sentence on April 23, 2008.[26]

Burton again sought a writ of certiorari from the Louisiana Supreme Court, re-urging the same claims, which the Court summarily denied on February 6, 2009.[27] Burton's conviction became final ninety (90) days later, on May 7, 2009, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[22]St. Rec. Vol. 4 of 6, Minute Entry, 8/17/07.

[23]St. Rec. Vol. 6 of 6, 4th Cir. Mandamus App., 2010-K-0427, 9/20/07.

[24]St. Rec. Vol. 3 of 6, 4th Cir. Order, 2007-K-1227, 11/27/07.

[25]St. Rec. Vol. 4 of 6, Pet.'s 4th Cir. Brief, 2007-KA-1342 (undated).

[26]*State v. Burton*, 980 So.2d 907 (La. App. 4 Cir. 2008); St. Rec. Vol. 4 of 6, 4th Cir. Opinion, 2007-KA-1432, 4/23/08.

[27]St. Rec. Vol. 5 of 6, S. Ct. Writ App., 2008-KO-1252, 5/22/08; *State v. Burton*, 999 So.2d 769 (La. 2009); S. Ct. Order, 2008-KO-1253, 2/6/09.

On April 14, 2009, Burton signed an application for post conviction relief, in which he raised the following claims for relief:[28]   (1) there was an undue delay attributable to the State; (2) prosecutors knowingly used perjured testimony at trial; (3) he received ineffective assistance of counsel; and (4) there was insufficient evidence presented at trial to sustain his conviction.[29]

When the Trial Court failed to rule on his post-conviction application, Burton sought another writ of mandamus from the Louisiana Fourth Circuit.[30]   The Court reviewed his claims *sua sponte* and denied relief on March 26, 2010, finding that Burton had failed to demonstrate his entitlement to relief.[31]

Burton timely sought supervisory review of that ruling in the Louisiana Supreme Court, re-urging his post-conviction claims.[32]   He also filed a supplemental assignment of error, adding four additional claims regarding his multiple offender adjudication and sentence.[33]   The Louisiana Supreme Court denied his writ without comment on April 25, 2011.[34]

## III.   Federal Petition

On August 25, 2011, the clerk of this Court filed Burton's petition for federal habeas corpus relief in which he raised five grounds for relief:[35]   (1) the instant habeas petition is timely filed

---

[28]St. Rec. Vol. 6 of 6, PCR App., 4/14/09.

[29]*Id.*

[30]St. Rec. Vol. 6 of 6, 4th Cir. Mandamus App., 2010-K-0427 (undated).

[31]St. Rec. Vol. 6 of 6, 4 th Cir. Order, 2010-K-0427, 3/26/2010.

[32]St. Rec. Vol. 6 of 6, S. Ct. Writ App., 2010-KH-0889, 4/19/2010.

[33]St. Rec. Vol. 6 of 6, Supp PCR claims, 12/5/2010.

[34]*State ex rel. Burton v. State*, 62 So.3d 71 (La. 2011); St. Rec. Vol. 6 of 6, S. Ct. Order, 2010-KH-0889, 4/25/11.

[35]Rec. Doc. 3, p. 14.

because there was an undue delay attributed to the State; (2) the prosecutor knowingly used perjured testimony at trial; (3) he received ineffective assistance of counsel when his counsel failed to sufficiently confront and cross-examine C.S. at trial; (4) the evidence prosecution used at trial was legally insufficient to sustain his conviction; and (5) he received ineffective assistance of counsel when his counsel failed to file post-conviction motions for a new trial and for post-verdict judgment of acquittal.

The State filed a response in opposition to Burton's petition arguing that while Burton's petition was timely filed, his claim regarding insufficient evidence is procedurally defaulted for failure to exhaust. The State further argues that Burton's remaining claims are without merit under federal law and should be dismissed for that reason.

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on July 5, 2011.[37] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on

---

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505, n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Burton's petition on August 25, 2011, after the filing fee was received. Burton dated his signature on the memorandum attached to his form petition on July 15, 2011. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing to this Court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State concedes, and the Court has determined that, Burton's petition was timely filed. The State contends that with the exception of Burton's insufficient evidence claim, he has properly exhausted all other claims. The State argues that the insufficient evidence claim is in procedural default for failure to exhaust.

However, upon review the Court finds that Burton's insufficient evidence claim is properly exhausted. Although inconsistently numbered, Burton raised this claim in his post-conviction relief application to the Trial Court, again in his writ of mandamus application to the Louisiana Fourth Circuit, and finally in his writ of certiorari application to the Louisiana Supreme Court.

## V.      **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI. Analysis

### A. Timeliness of Burton's Petition (Claim Number 1)

Burton contends that if his petition is not timely filed, it is because the Trial Court clerk failed to perform his/her administrative duties, which led to an undue delay attributed to the State.

Nevertheless, the State concedes that his petition is timely filed. Additionally the Court finds that a review of the record reveals that his petition is timely filed. Therefore this claim is not an issue in the instant matter and consequently, Burton's Claim Number 1 is moot.

### B. Prosecutors' Use of Perjured Testimony (Claim Number 2)

Burton argues that the prosecutor knowingly presented perjured testimony at trial which was material to his conviction. He contends that C.S.'s testimony was false because she waited nearly one year from the time of the incident before she testified for the first time about Burton touching her vagina or ordering V.C. to remove his pants. Burton contends that these statements directly contradicted her earlier statements to the police and her father, because C.S. initially reported Burton never got under her clothes, and made no mention of Burton ordering V.C. to remove his pants. Burton further argues that the prosecutor knew C.S.'s testimony was false because the prosecution was in possession of the police reports and C.S.'s note to her father. Burton additionally argues that

this testimony was material and without it, the State could not have met its burden of proof to convict him.

In opposition, the State argues that Burton has failed to present evidence to show that C.S.'s testimony was actually false. The State contends that although C.S. conceded at trial that she had failed to report the full scope of Burton's actions in her initial reports, Burton has not established that her testimony was false, rather than simply more complete than her initial disclosure. The State further contends that Burton has failed to establish that prosecutors had any knowledge of C.S.'s false statements and therefore, Burton's claim is without merit.

As a general matter, due process requires that state court proceedings be fundamentally fair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941). A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. *Id.*; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991). It is beyond question that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). This prohibition includes subornation of false testimony. *Id.*

To establish a due process violation based on the government's use of false or misleading testimony, the defendant must show (1) that the witness's testimony was actually false; (2) that the testimony was material; and (3) that the prosecution knew the witness's testimony was false." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000)*; Fuller v. Johnson*, 114 F.3d 491, 498 (5th Cir. 1997) (citing *Giglio v. United States*, 92 S. Ct. 763 (1972)).

In this case, the State is correct in pointing out that Burton has failed to establish that C.S.'s testimony was actually false. At most, Burton has established that C.S.'s testimony is inconsistent

with her previous statements to Detective Thomas and the note to her father. However, courts have held that conflicting or inconsistent testimony is insufficient to establish perjury. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). Thus, merely because C.S.'s testimony at trial conflicted with her previous statements, does not establish that the testimony was actually false. Furthermore, Burton's counsel had the opportunity to question C.S. at trial to determine the veracity of her testimony. During cross-examination, Burton's counsel asked C.S. about her inconsistent account of events. C.S. explained her previous statements by stating that at the time she was scared and that she did not want talk about all of the details. Thus, Burton has not established that C.S.'s testimony at trial was in fact false.

Additionally, Burton has failed to establish that the prosecution had any knowledge that C.S.'s testimony would be inconsistent with her previous statements. Although Burton contends that the prosecutors had possession of Detective Thomas's police reports and C.S.'s note to her father, which contained an inconsistent account of events, the mere possession of these conflicting documents is insufficient to establish that prosecution knew C.S.'s testimony would later be inconsistent. *See, Kutzner* at 609. In fact, Burton's counsel was in possession of these documents, which he used to cross-examine C.S. about her differing account of events.

Thus, even if Burton had established that the testimony was material to his conviction, he has failed to establish that the testimony was false or that the prosecution had knowledge of its falsity. Therefore, the state court's denial of relief of this claim was not contrary to, or an unreasonable application of federal law. Thus, Burton is not entitled to relief on this claim.

## C.  Ineffective Assistance of Counsel (Claim Numbers 3 and 5)

Burton raises two claims related to the ineffective assistance of his trial counsel.  First, Burton argues that his counsel failed to sufficiently cross-examine C.S. about her purported perjured trial testimony.  Second, Burton argues that his counsel failed to request a new trial or post-verdict judgment of acquittal.  Burton contends that his counsel's deficient performance in these two areas fell below the standard of reasonableness, and deprived him of a fair trial.

Contrarily, the State argues that Burton has failed to demonstrate that his counsel's performance in cross-examining C.S. was deficient, let alone that it prejudiced his defense.  The State further argues that Burton has failed to establish that his counsel's failure to request a new trial or post-verdict judgment of acquittal was deficient, because counsel is not required to pursue a motion that would ultimately be unsuccessful. Thus, the State argues his claims are without merit.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need

not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just

"conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1413 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S. Ct. at 1419 n.2).

Courts have held that there is a strong presumption that the scope of cross examination falls within a counsel's zone of trial strategy. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984); *see also Strickland*, 466 U.S. at 690-91 (noting that reasonable strategic decisions do not constitute defective performance). Furthermore, it is not unreasonable trial strategy to refrain from extensive questioning of a witness during a jury trial to avoid repeating the details of the offense. *See Buckley v. Collins*, 904 F.2d 263, 265 (5th Cir. 1990).

Here, although Burton contends that his counsel's failure to thoroughly question C.S. on her inconsistent statements essentially led to his conviction, his counsel did in fact question C.S. on the matter. During cross examination, Burton's counsel asked C.S. why her note did not include details of Burton touching her vagina or ordering V.C. to drop his pants.[38] In response, C.S. stated that she did not want to say everything at the time she wrote the note and that she was scared.[39] Burton's counsel further asked C.S. twice whether it was fair to say she was lying when she wrote the note to her father.[40] Both times C.S. denied lying.[41] Later, Burton's counsel asked C.S. about her statement to Detective Thomas, in which she said that Burton did not touch her underneath her clothes.[42] In response, C.S. acknowledged her prior inconsistent statement.[43]

Thus, while Burton appears to complain that his counsel failed to continue to assault C.S.'s credibility, doing so would have been superfluous given that he had already drawn successful

---

[38]St. Rec., Vol. 1 of 6, Trial Transcript, p. 30-31, 10/5/99.

[39]*Id.*

[40]*Id.*, p. 31-32.

[41]*Id.*

[42]*Id.*, p. 39.

[43]*Id.*

concessions about her inconsistent account of events. Therefore, it can hardly be stated that Burton's counsel's performance fell below an objective standard of reasonableness, let alone that it prejudiced his defense.

Additionally, Burton has not established that his counsel was ineffective in failing to request a new trial or post-verdict judgment of acquittal. Courts have held that a counsel's failure to urge or argue a motion that would have been ultimately unsuccessful does not prejudice a petitioner and does not merit relief on habeas review. *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984).

Here, Burton argues that if his counsel filed these motions, they would have been granted because there was not enough evidence to convict him. However, he provides no basis for this conclusion. In fact, in his direct appeal to the Louisiana Fourth Circuit, the Court found that there was sufficient evidence to sustain his convictions. Thus, Burton could not have been prejudiced by his counsel's failure to file a motion that would have likely been denied. Therefore, Burton has not established that his counsel's failure to request a new trial or post-verdict judgment of acquittal fell below an objective standard of reasonableness, nor that it prejudiced his defense.

The state court's denial of relief of this claim was not contrary to, or an unreasonable application of *Strickland*. Thus, Burton is not entitled to relief on his ineffective assistance of counsel claim.

### D. Sufficiency of Evidence to Support a Molestation of a Juvenile and Attempted Molestation of a Juvenile Verdict (Claim 4)

Burton alleges that the evidence presented at trial was insufficient to support his conviction because the State failed to prove his use of influence by virtue of his position of control and supervision over the victim, an element required by Louisiana law to prove Burton was guilty. Burton points to *State v. Forbes*, 716 So.2d 424 (La. App. 1 Cir. 1998), a purportedly analogous case

in which the Louisiana First Circuit held that because there was no evidence of the defendant's use of influence by virtue of his position of control and supervision over the victim, there was insufficient evidence to sustain a conviction of attempted molestation of a juvenile. Burton argues that because the facts of *Forbes* are similar to his case, the state court's denial of relief was an unreasonable application of the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). He further argues that not every reasonable hypothesis of innocence was excluded by the circumstantial evidence brought at trial, as required by Louisiana law.

Burton's counsel raised this claim on direct appeal to the Louisiana Fourth Circuit. The Court relying upon the standards in *Jackson*, and related state case law, reviewed the testimony and evidence presented to the jury. The Court resolved that the State had produced sufficient evidence to establish each of the elements required to prove that Burton was guilty of molestation of a juvenile and attempted molestation of a juvenile, including Burton's influence and control over the victims. This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent writ application without reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). The court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). The appropriate standard for determining the sufficiency of evidence is that set forth by the United States Supreme Court in *Jackson*, which was relied upon by the Louisiana Fourth Circuit.

As noted by Burton, Louisiana law allows a crime to be proven by circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved

that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the *Jackson* and AEDPA standards of review. *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

Under *Jackson*, 443 U.S. at 307, a court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir. 2011). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 130 S. Ct. 665, 672 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v.*

*Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute

its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*,

55 F.3d at 1062.

Burton was charged with and convicted of molestation of a juvenile and attempted

molestation of a juvenile. Under Louisiana law, the offense of molestation of a juvenile provides:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of
> any lewd or lascivious act upon the person or in the presence of any child under the
> age of seventeen, where there is an age difference of greater than two years between
> the two persons, with the intention of arousing or gratifying the sexual desires of
> either person, by use of force, violence, duress, menace, psychological intimidation,
> threat of great bodily harm, or by the use of influence by virtue of a position of
> control or supervision over the juvenile. Lack of knowledge about the juvenile's age
> is not a defense.

La. Rev. Stat. Ann. § 14:81.2.

Burton was charged on both counts with committing the crime of molestation by the use of

influence by virtue of position or control or supervision over the juveniles. In the instant matter, the

only element of the offense that Burton disputes is his use of influence by virtue of his position of

control and supervision over the victims.

In determining whether a defendant used influence by virtue of his position of control and

supervision over the victim, courts have consider numerous factors. These factors include the

amount of time the defendant spent alone with the victims, the nature of the relationship between

the victim and the defendant, the defendant's age, and the defendant's authority to discipline. *See*

*State v. Brock*, 521 So.2d 477 (La. App. 4 Cir. 1988); *State v. Davis*, 702 So.2d 1014 (La. App. 3

Cir. 1997); *State v. Mickens*, 731 So.2d 463 (La. App. 2 Cir. 1999).

Here, although Burton argues that the facts of *Forbes* are the same as the instant case, *Forbes*

is distinguishable. In *Forbes*, seven year old victim, K.S., testified that when she was at her

grandmother's home, the defendant touched her breasts and the area above her vagina.  *Forbes*, 716 So.2d at 426.  At trial,  K.S.'s grandmother testified that when K.S. was over, she was always at home and the only one to have control or supervision of her granddaughter.  *Id*.  Furthermore, she stated that the defendant slept in her home on less than five occasions.  *Id*.  Additionally, at trial, K.S. testified that at her grandmother's house, her grandmother was the boss. *Id*.  When asked if the defendant baby-sat her or could tell her what to do, K.S. said that he could not.  *Id*.

Conversely, Burton's relationship with the victims was far more extensive.  There was evidence presented at trial that suggested Burton was the live-in boyfriend of V.C.'s mother.[44]

V.C. stated that he knew Burton for 5 or 6 years and thought of him as a father figure.[45]  C.S. also testified that she had known Burton for a little over 3 years.[46]  Additionally Burton was the only adult home at the time of the incident.[47]  Furthermore, Burton claimed that his actions were for disciplinary purposes, and not for sexual gratification, indicating that Burton had the power to discipline the victims.[48]  Moreover, because the victims were scared of being punished for the kissing incident, the jury could have reasonably concluded that Burton, by virtue of his age and fatherly position used their fear of being punished, to exercise control.[49]

Thus, after viewing the evidence in the light most favorable to the prosecution, a rational

---

[44]St. Rec. Vol. 1 of 6, Trial Transcript, p. 46-49, 10/5/99.

[45]*Id*.

[46]St. Rec. Vol. 1 of 6, Trial Transcript, p. 3, 10/5/99.

[47]*State v. Burton*, 838 So. 2d 946 (La. App.4 Cir. 2003);  St. Rec. Vol. 1 of 6, 4th Cir. Opinion, 2002-KA-1854, p. 2-6, 2/12/03.

[48]St. Rec. Vol. 1 of 6, Pet's 4th Cir. Brief, p.4, 9/27/02.

[49]St. Rec. Vol. 1 of 6, Trial Transcript, pp. 7, 52, 10/5/99.

trier of fact could have found the essential elements of the crime, including Burton's use of influence by virtue of his position of control and supervision over the victims, to have been proven beyond a reasonable doubt.

Therefore, the state court's denial of relief of this claim was not contrary to, or an unreasonable application of federal law. Thus, Burton is not entitled to relief on this claim.

## VII.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Burton's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[50]

New Orleans, Louisiana, this 20th day of August, 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[50]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.